SINICROPI v MAZUREK

Docket No. 268000. Submitted November 8, 2006, at Lansing. Decided December 7, 2006, at 9:00 a.m.

Martin A. Powers brought an action in the Jackson Circuit Court against Holly V. Mazurek for custody of a child born to Mazurek while Mazurek was not married. At the time of the child's birth, Powers and Mazurek had executed an acknowledgment of parentage pursuant to the Acknowledgment of Parentage Act, MCL 722.1001 *et seq.*, recognizing Powers as the father; however, several years later, DNA testing revealed that the child's biological father was in fact Gregory G. Sinicropi, whom Mazurek had briefly dated. Powers continued to raise the child with Mazurek at their home in Jackson until the relationship ended, at which time they stipulated the entry of a consent order giving them joint legal and physical custody of the child. Three years later, Mazurek moved a significant distance from the Jackson area, and Powers asked the court for sole physical custody. The trial court, John G. McBain, J., granted Powers's request temporarily pending an evidentiary hearing. Meanwhile, Sinicropi brought an action under the Paternity Act, MCL 722.711 *et seq.*, which the trial court consolidated with the custody case. Without revoking Powers's acknowledgment of parentage, the trial court entered an order of filiation recognizing Sinicropi as the child's father, effectively leaving the child with two legal fathers. The trial court awarded sole physical custody of the child to Powers, awarded Powers and Mazurek joint legal custody, awarded Mazurek parenting time, and ordered Mazurek and Sinicropi to pay child support. Mazurek appealed, and Sinicropi and Powers cross-appealed.

The Court of Appeals *held*:

1. The trial court erred in granting Sinicropi an order of filiation under the Paternity Act because a proper acknowledgment of parentage was executed and had not been revoked. The unrevoked acknowledgment established paternity by conferring the status of natural and legal father on Powers.

2. The Paternity Act and the Acknowledgment of Parentage Act constitute alternative mechanisms for establishing paternity

where a child is born out of wedlock; the Legislature did not intend to allow the creation of two legal fathers by using both acts.

3. Sinicropi's constitutional rights would not be violated if he is deprived of the opportunity to litigate paternity and obtain an order of filiation because, although he is the undisputed biological father of the child, he lacks the substantial parent-child relationship that could have given rise to a liberty interest that implicated his right to due process.

4. The trial court erred in addressing revocation of the acknowledgment of parentage outside the four corners of the applicable statutory provision, MCL 722.1011(3), which requires the court to consider whether Mazurek proved by clear and convincing evidence that revocation is proper given the equities of the case, and further erred in applying the doctrines of res judicata and collateral estoppel to the paternity issue, which had not been determined by means of litigation.

5. The trial court did not err in considering Powers a parent for purposes of the custody analysis, because the acknowledgment of parentage gave Powers the status of natural parent; nor did the trial court err in concluding that Mazurek's decision to move 89 miles from Powers constituted a sufficient change of circumstances to warrant considering a change of custody. The trial court's factual findings regarding the best-interests factors were not against the great weight of the evidence, and although the trial court did not explicitly address every matter in evidence, its findings were sufficiently articulated for review. Mazurek's contention that the trial court ruled in favor of a city rather than a person is without merit, because it was clear that the trial court considered the advantages of the city of Jackson in the context of the child's established community, school, and Powers's extended family. Further, the trial court did not inappropriately give double weight to geographical location because that consideration naturally arises under several overlapping factors. The trial court's failure to determine the child's preference does not require reversal because neither of the parties expressed a wish to have the child interviewed, and because this factor would not have been determinative under the circumstances. The trial court did not err in weighting the factors unequally.

6. On remand, the trial court must address the issue of revocation of the acknowledgment of parentage solely under MCL 722.1011(3), which requires that Mazurek prove by clear and convincing evidence that revocation of the acknowledgment is proper considering the equities of the case. If the trial court rejects the revocation of the acknowledgment of parentage, the trial court

shall pronounce Powers as the child's legal father, vacate the order of filiation and any orders based on it, and let the custody determination stand. If the trial court accepts the revocation of the acknowledgment of parentage, the trial court shall pronounce Sinicropi the child's legal father, vacate any orders based on Powers's status as the father, and enter any appropriate orders regarding custody and support.

Remanded for further proceedings.

1. PARENT AND CHILD — PATERNITY ACT — ACKNOWLEDGMENT OF PARENTAGE ACT.

An order of filiation cannot be entered under the Paternity Act if, under the Acknowledgment of Parentage Act, a proper acknowledgment of parentage was previously executed and has not been revoked (MCL 722.711 *et seq.*; MCL 722.1001 *et seq.*).

2. PARENT AND CHILD — PATERNITY ACT — ACKNOWLEDGMENT OF PARENTAGE ACT.

The Paternity Act and the Acknowledgment of Parentage Act constitute alternative mechanisms for establishing paternity where a child is born out of wedlock; the Legislature did not intend to allow the creation of two legal fathers by using both acts (MCL 722.711 *et seq.*; MCL 722.1001 *et seq.*).

3. CONSTITUTIONAL LAW — DUE PROCESS — PARENT AND CHILD.

Preventing a biological father from obtaining an order of filiation and requesting custody of a child born out of wedlock does not implicate due process concerns where there is no established parent-child relationship that gives rise to a liberty interest.

4. PARENT AND CHILD — ACKNOWLEDGMENT OF PARENTAGE ACT — REVOCATION OF ACKNOWLEDGMENT — EQUITY.

A court may not revoke an acknowledgment of parentage without considering the equities of the case, even if clear and convincing evidence establishes that the male signatory was not the biological father (MCL 722.1011).

*Vicki L. Armstrong* and *Melissa G. Leckie* for Gregory G. Sinicropi.

*Anne Argiroff* for Holly V. Mazurek.

*Elizabeth Warner* for Martin A. Powers.

Before: MURPHY, P.J., and METER and DAVIS, JJ.

MURPHY, P.J. Each of the three parties has filed an appeal in this litigation that involves issues regarding custody of a seven-year-old boy born to Holly Mazurek: paternity, an order of filiation, an acknowledgment of parentage and attempted revocation thereof, equitable parenthood, the constitutional rights of a biological father, standing, statutory construction, child support, and various other legal matters. The trial court effectively ruled that the child has, simultaneously, two legally recognized fathers. The trial court awarded Martin Powers, who executed an acknowledgment of parentage with Mazurek but who is not the child's biological father, sole physical custody of the minor child, while also entering an order of filiation in favor of Gregory Sinicropi, who is the child's biological father. The trial court rejected attempts to have the acknowledgment of parentage revoked. Mazurek, but not Sinicropi, was awarded parenting time, and both Mazurek and Sinicropi were ordered to pay child support. We hold that an order of filiation cannot be entered under the Paternity Act, MCL 722.711 *et seq.*, if, under the Acknowledgment of Parentage Act, MCL 722.1001 *et seq.*, a proper acknowledgment of parentage was previously executed and has not been revoked. This is because, under MCL 722.1003 and MCL 722.1004, an unrevoked acknowledgment already legally established paternity and conferred the status of natural and legal father on the man executing the acknowledgment, which in turn entitled him to seek custody or parenting time if desired and obligated him to pay support if appropriate. Accordingly, the trial court erred by ruling that the child has two legally recognized fathers under both the Acknowledgment of Parentage Act and the Paternity Act. The case is remanded to the trial court for action consistent with this opinion and further

reflection on the issue of revocation of the acknowledgment of parentage.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case concerns a child who was born out of wedlock in 1999 to Mazurek while she was in a relationship with Powers, but Sinicropi is the biological father of the child as established by DNA (deoxyribonucleic acid) testing. Mazurek had dated Powers, then briefly dated Sinicropi, before subsequently resuming her relationship with Powers, during which time the child was born. Powers, along with Mazurek, executed an acknowledgment of parentage on the child's birth. None of the parties was aware that Sinicropi was the biological father until 2004, when the DNA testing was conducted following Mazurek's suspicion that Sinicropi might be the father given the child's developing physical characteristics and appearance. Meanwhile, Powers raised the child as his own with Mazurek.

Powers and Mazurek again split up in 2001, and Powers filed a custody action against Mazurek when the relationship ended. They immediately stipulated the entry of a consent order giving them joint legal and physical custody. In 2004, Powers sought sole custody after Mazurek moved out of Jackson, Michigan, where Powers, Mazurek, and the child had resided since the child's birth, to live with her new fiancé in Shepherd, Michigan. An ex parte order was entered granting Powers sole custody pending an evidentiary hearing. The trial court refused to dismiss Powers's custody action and to revoke the acknowledgment of parentage as requested by Mazurek on multiple occasions, not because of a failure to show that Sinicropi was the biological father, but because it would be inequitable

and because res judicata and collateral estoppel arising out of the consent order of joint custody would not allow it.

The trial court eventually converted the ex parte custody order into a temporary order, scheduling a full evidentiary hearing on issues of custody and parenting time. Thereafter, Sinicropi filed a paternity action under the Paternity Act. Subsequently, the trial court, after consolidating the paternity and custody cases, entered an order of filiation that recognized Sinicropi as the child's father, yet the acknowledgment of parentage was not revoked. At this stage in the proceedings, the young boy was five years old. The trial court had rejected Powers's argument that Sinicropi lacked standing to file a paternity action, and it similarly rejected renewed efforts to have Powers's custody action dismissed for lack of standing and to have the acknowledgement of parentage revoked. The trial court effectively ruled that the child had two legal fathers under the Acknowledgment of Parentage Act and the Paternity Act.

Following a best-interests evidentiary hearing on custody, the trial court awarded sole physical custody of the child to Powers, awarded Powers and Mazurek joint legal custody, and awarded Mazurek parenting time. The trial court reserved ruling on parenting time for Sinicropi and on the issue of child support. In response to postjudgment motions filed by Mazurek and Sinicropi, the trial court concluded that it should have conducted a best-interests analysis with respect to Sinicropi and custody, but the court otherwise rejected Mazurek's and Sinicropi's attack on the judgment. The trial court reviewed the child custody factors and in a separate opinion decided that it would not be in the child's best interests to award shared custody to Sini-

cropi. Subsequently, Mazurek and Sinicropi were both ordered to pay child support. All three parties now appeal, presenting various arguments.

## II. STANDARDS OF REVIEW

This case requires us to address issues of statutory construction, constitutional law, and, in general, questions of law, all of which are reviewed de novo on appeal. *Feyz v Mercy Mem Hosp*, 475 Mich 663, 672; 719 NW2d 1 (2006); *Wayne Co v Hathcock*, 471 Mich 445, 455; 684 NW2d 765 (2004); *Fultz v Union-Commerce Assoc*, 470 Mich 460, 463; 683 NW2d 587 (2004).

We shall also examine the trial court's child custody determination for purposes of judicial expediency given the possibility that the court will again decline to revoke the acknowledgment of parentage. There are three different standards of review applicable to child custody cases. The trial court's factual findings on matters such as the established custodial environment and the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed " 'unless the evidence clearly preponderates in the opposite direction.' " *Vodvarka v Grasmeyer,* 259 Mich App 499, 507; 675 NW2d 847 (2003) (citation omitted); *Fletcher v Fletcher*, 229 Mich App 19, 24; 581 NW2d 11 (1998), citing MCL 722.28. In reviewing the findings, this Court defers to the trial court's determination of credibility. *Mogle v Scriver,* 241 Mich App 192, 201; 614 NW2d 696 (2000). A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. *Foskett v Foskett*, 247 Mich App 1, 5; 634 NW2d 363 (2001). Further, pursuant to MCL 722.28, questions of law in custody cases are reviewed for clear legal error. See *Fletcher, supra* at 24.

III. GOVERNING PRINCIPLES OF STATUTORY CONSTRUCTION

In *Paige v City of Sterling Hts*, 476 Mich 495, 504; 720 NW2d 219 (2006), our Supreme Court, quoting *Reed v Yackell*, 473 Mich 520, 528-529; 703 NW2d 1 (2005), reiterated the recognized and controlling principles of statutory construction, stating:

> "Our fundamental obligation when interpreting statutes is 'to ascertain the legislative intent that may reasonably be inferred from the words expressed in the statute.' *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). If the statute is unambiguous, judicial construction is neither required nor permitted. In other words, '[b]ecause the proper role of the judiciary is to interpret and not write the law, courts simply lack authority to venture beyond the unambiguous text of a statute.' " *Id*. [Alteration in original.]

This Court gives effect to every word, phrase, and clause in the statute. *Shinholster v Annapolis Hosp*, 471 Mich 540, 549; 685 NW2d 275 (2004). We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id*. This Court must avoid a construction that would render any part of a statute surplusage or nugatory. *Bageris v Brandon Twp*, 264 Mich App 156, 162; 691 NW2d 459 (2004). "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002).

Our analysis involves examination of the Acknowledgment of Parentage Act, the Paternity Act, and the Child Custody Act, MCL 722.21 *et seq.*, along with consideration of the interaction or interrelationship between the acts. These three acts must be read *in pari*

*materia. Aichele v Hodge*, 259 Mich App 146, 161; 673 NW2d 452 (2003). Statutes *in pari materia* are those sharing a common purpose or those that relate to the same subject. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998); *Crawford Co v Secretary of State*, 160 Mich App 88, 95; 408 NW2d 112 (1987). Statutes *in pari materia* are to be read and construed together as one law even if they were enacted at different times and without specific reference to each other. *Schuster, supra* at 417. "[T]hey must be construed to preserve the intent of each and, if possible, interpreted in such a way that neither denies the effectiveness of the other." *Crawford Co, supra* at 95. If statutory provisions can be construed in a manner that avoids conflict, then that construction should control the analysis. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). "The object of the in pari materia rule is to give effect to the legislative purpose as found in harmonious statutes." *Id.* (citation omitted).

### IV. ANALYSIS

#### A. ACKNOWLEDGMENT OF PARENTAGE ACT

The best place to begin our analysis is with the Acknowledgment of Parentage Act, because Powers and Mazurek jointly executed an acknowledgment long before Sinicropi brought an action under the Paternity Act. MCL 722.1003(1) provides:

> If a child is born out of wedlock, a man is considered to be the natural father of that child if the man joins with the mother of the child and acknowledges that child as his child by completing a form that is an acknowledgement of parentage.[1]

---

[1] "An acknowledgment of parentage form is valid and effective if signed by the mother and father and those signatures are notarized by a notary

There is no dispute that Mazurek and Powers properly executed an acknowledgment of parentage consistent with the requirements of the statute, and thus Powers was legally considered the natural father of the child. MCL 722.1004 provides:

> An acknowledgment signed under this act establishes paternity, and the acknowledgement may be the basis for court ordered child support, custody, or parenting time without further adjudication under the paternity act . . . . The child who is the subject of the acknowledgement shall bear the same relationship to the mother and the man signing as the father as a child born or conceived during a marriage and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth.

Pursuant to the plain language of the statute, when Powers and Mazurek executed the acknowledgement of parentage Powers's paternity was established, and the child was in a position identical to one in which the child was born or conceived during a marriage. See *Killingbeck v Killingbeck*, 269 Mich App 132, 143; 711 NW2d 759 (2005) (acknowledgment of parentage establishes paternity and gives the male acknowledger "status as a parent"). The Legislature was clearly expressing a public policy position favoring legal protection of a child born out of wedlock, pursuant to which a mother and a man jointly executing an acknowledgment of parentage would be legally recognized as the child's parents without litigation, thereby allowing the parties to seek and the court to enter custody, parenting time, and support orders.

In *Eldred v Ziny*, 246 Mich App 142, 148-149; 631 NW2d 748 (2001), this Court, discussing the status and rights conferred on a man who acknowledges parentage under the act, stated:

public authorized by the state in which the acknowledgment is signed. An acknowledgment may be signed any time during the child's lifetime." MCL 722.1003(2).

A plain reading of § 4 reveals that, contrary to Mr. Ziny's assertion, acknowledgement of paternity under MCL 722.1003 does not afford the father the same legal rights as a father whose child is born within a marriage, but rather ... merely entitles the parties to seek custody, support, or parenting time without the need to first obtain an order of filiation under the Paternity Act, MCL 722.711 *et seq.* Although MCL 722.1004 affords the *child* the full rights of a child born in wedlock, the statute does not grant a putative father who acknowledges paternity the same legal rights as a father whose child is born in wedlock. See, e.g., *Crego v Coleman*, 463 Mich 248, 264; 615 NW2d 218 (2000). [Emphasis in original.][2]

---

[2] The parties have devoted a great deal of attention to *Eldred*, but it is important to view that opinion in context. In *Eldred*, a child was born out of wedlock and the natural father and the mother signed an acknowledgment of parentage. The child lived with her mother, and the father was ordered to pay child support following a support action initiated by the county prosecutor. The mother then died in an automobile accident, and the child began living with her father, but she also stayed at times with her maternal grandparents. The maternal grandmother later intervened in the support action and filed a third-party petition for custody. Eventually, an order awarding the maternal grandmother sole legal and physical custody was entered. *Eldred, supra* at 144-145. This Court held, contrary to the father's argument, that the maternal grandmother had standing to maintain the custody action under MCL 722.26c(1)(b) (biological parents never married, custodial parent dies, third person related to child). *Id.* at 145-147. The father also argued that MCL 722.26c(1)(b) conflicted with his custody rights as a natural father under the Acknowledgment of Parentage Act despite the fact that he had never taken the steps to procure a court order awarding him custody of the child. The father contended that he had the same legal rights as those held by a father whose child was born in wedlock, and that it was unnecessary for him to seek custody under the Child Custody Act. The Court found that the statutes did not conflict and that, as quoted above, the father was not in the same position as a father whose child was born in wedlock. *Id.* at 147-149. Pertinent to our analysis, the *Eldred* panel never held that the acknowledgment of parentage failed to provide the father with standing or a right to seek custody, or that the law precluded the father from being awarded custody. Further, the *Eldred* opinion did not hold that the rights of a biological father are superior to the rights of a man who acknowledges parentage and obtains custody with respect to

Although Powers may not have had legal rights identical to those of a father whose child is born or conceived within a marriage, the Acknowledgment of Parentage Act bestowed on Powers the designation of "natural father," MCL 722.1003(1), and entitled him to seek custody. Powers was the "legal parent" for purposes of the Child Custody Act. *Killingbeck, supra* at 144 ("Pursuant to the acknowledgment of parentage statute, Killingbeck thus became a 'legal parent' for purposes of the Child Custody Act . . . .").[3] Moreover, from the child's legal perspective, it was as if he were born in wedlock.

Mazurek made multiple attempts to have Powers's custody action dismissed and the acknowledgment of parentage revoked, which the trial court rejected. With regard to revocation of an acknowledgment of parentage, MCL 722.1011(1) allows certain individuals, including Mazurek as the child's mother but not Sinicropi, to file a claim for revocation. An affidavit signed by the claimant is required and must set forth facts that constitute either a mistake of fact, newly discovered evidence, fraud, misrepresentation, misconduct, or duress relative to the acknowledgment. MCL 722.1011(2). Relevant here is mistake of fact. MCL 722.1011(3) provides:

> If the court finds that the affidavit is sufficient, the court may order blood or genetic tests at the expense of the

a child born out of wedlock. Indeed, MCL 722.1011, which we will discuss later, suggests otherwise. We note that in this case, Powers obtained an order in 2001 granting him joint legal and physical custody.

[3] Contrary to Mazurek's arguments on appeal, Powers had standing to seek custody under the Child Custody Act as a "parent" pursuant to the language found throughout that act and the plain language of the Acknowledgment of Parentage Act, where the acknowledgment had been properly executed and not revoked. MCL 722.1004; *Killingbeck, supra* at 144.

claimant, or may take other action the court considers appropriate. The party filing the claim for revocation has the burden of proving, by clear and convincing evidence, that the man is not the father *and that, considering the equities of the case, revocation of the acknowledgment is proper.* [Emphasis added.]

In *Killingbeck, supra* at 144, this Court emphasized that even where there is clear and convincing evidence that the man who executed the acknowledgment of parentage is not the biological father, revocation of the acknowledgment must also be warranted by the equities in the case. It is plain from the language in MCL 722.1011(3) that the Legislature contemplated situations in which a man executed an acknowledgement of parentage, the man was determined not to be the biological father, but the acknowledgment of parentage would nonetheless remain valid and intact in the face of an attempted revocation if the equities of the case so dictated, thereby leaving the man who was not the biological father as the natural or legal father and shutting the door on the biological father. This scenario, which played out in the case at bar, could be viewed in a sense as creating an "equitable-like" parent because equity ultimately allows the man to retain his recognition as the natural father under the Acknowledgment of Parentage Act where revocation is rejected despite the lack of any biological connection between the child and the acknowledger. But regardless of the equitable nature of the circumstances, a man executing an acknowledgment of parentage that remains valid in the face of an unsuccessful revocation attempt is considered the natural and legal father of the child.[4]

---

[4] It may well be that the Legislature, which has always been concerned chiefly with the best interests and protection of children as reflected in various legislation, made a policy decision in enacting MCL 722.1011(3), which recognized that, regardless of the lack of biological ties, a child's

In *Van v Zahorik*, 460 Mich 320, 331; 597 NW2d 15 (1999), our Supreme Court rejected a request to extend the doctrine of equitable parenthood outside the context of marriage because "the extension of substantive rights regarding child custody implicates significant public policy issues and is within the province of the Legislature, not the judiciary." *Van*, however, is not implicated here because, in contrast to the factual circumstances in *Van*, Powers executed an acknowledgment of parentage. And, furthermore, the Acknowledgment of Parentage Act reflects express legislative approval of an "equitable-like" parent by not permitting the revocation of an acknowledgment of parentage if a claimant fails to establish clear and convincing evidence that the equities of the case demand revocation regardless of the fact that another man has clearly and convincingly been shown to be the biological father. See *Killingbeck, supra* at 143-144 (similarly distinguishing *Van*).[5] However, and once again, regardless of the equitable nature of such a situation, the man executing the unrevoked acknowledgment is still deemed the natural and legal father.

### B. THE PATERNITY ACT AND ITS RELATIONSHIP TO THE ACKNOWLEDGMENT OF PARENTAGE ACT

Before reviewing the trial court's handling and denial of the motion to revoke the acknowledgment of

---

well-being might be better served by having a male acknowledger continue caring for the child as father, especially if he has done so for many years, rather than traumatically removing the man from the child's life and introducing a new male who is essentially a stranger.

[5] To the extent that the trial court here relied on the doctrine of equitable parenthood apart from MCL 722.1011, it was contrary to *Van* and in error. Unless there is a proper revocation, and even if a court relies on the equity provision in MCL 722.1011(3) in refusing to revoke an acknowledgment, a man who executes an acknowledgment of parentage is the natural and legal father, not the equitable father. MCL 722.1003(1); *Killingbeck, supra* at 144.

parentage, we shall first discuss the Paternity Act and its relationship to the Acknowledgment of Parentage Act, given that an order of filiation was entered despite the fact that the acknowledgment was not revoked. We conclude that the trial court erred when, after refusing to revoke the acknowledgment of parentage, it nonetheless entertained Sinicropi's paternity action and entered an order of filiation recognizing Sinicropi as the child's legal father as a result of the DNA testing.

We hold that Sinicropi could not obtain an order of filiation because the Paternity Act and the Acknowledgment of Parentage Act, when read and construed together, do not permit the entry of an order of filiation where an unrevoked acknowledgment of parentage is already in place.

As noted above, the Acknowledgment of Parentage Act *"establishes paternity"* and provides a court with the basis and authority to enter orders regarding custody, parenting time, and support. MCL 722.1004. With respect to the Paternity Act, our Supreme Court stated that "[t]he act was created as a procedural vehicle for determining the paternity of children 'born out of wedlock,' and enforcing the resulting support obligation." *Syrkowski v Appleyard*, 420 Mich 367, 375; 362 NW2d 211 (1985); see also *Elmore v Ellis*, 115 Mich App 609, 611; 321 NW2d 744 (1982) (purpose of act is to provide child support to children born out of wedlock). Thus, the Acknowledgment of Parentage Act and the Paternity Act provide two separate procedures by which to establish paternity and provide support for children born out of wedlock. In *Aichele, supra* at 154-155, this Court, comparing the two acts, noted:

> [T]he acts simply provide different means to the same end. Under the Paternity Act, a party can seek a judicial determination of paternity; under the Acknowledgment of

Parentage Act, a man and a woman can essentially stipulate the man's paternity. Under either act, paternity can be properly established *only* if the child is "born out of wedlock[.]" [Emphasis in original.]

It is evident to us that the Paternity Act and the Acknowledgment of Parentage Act constitute legislation envisioning alternative mechanisms to establish paternity where a child is born out of wedlock, i.e., an acknowledgment of parentage is executed or an order of filiation is entered. But the Legislature did not intend the creation of two legal fathers for one child through utilization of both acts, one by acknowledgment and one by order of filiation.[6] A court cannot recognize both. As stated by our Supreme Court in *In re KH*, 469 Mich 621, 624; 677 NW2d 800 (2004), "where a legal father exists, a biological father cannot properly be considered even a putative father."

With the enactment of the revocation provision contained in MCL 722.1011 of the Acknowledgment of Parentage Act, the Legislature astutely envisioned cases in which it is discovered that the biological father is not the same individual who executed the acknowledgment of parentage, yet the Legislature did not provide that the acknowledger is then automatically no longer deemed the natural father and that an order of filiation can be entered in favor of the biological father if known. Rather, the Legislature provided for revocation proceedings that took into consideration biology

---

[6] The Paternity Act and the Acknowledgment of Parentage Act contain provisions that lend support to the conclusion that both acts cannot be implemented to recognize two legal fathers for one child. See MCL 722.714(2) ("An action to determine paternity shall not be brought under this act if the child's father acknowledges paternity under the acknowledgment of parentage act."); MCL 722.1004 (signed acknowledgment establishes paternity "without further adjudication under the paternity act").

*and* equity. Construing the Acknowledgment of Parentage Act and the Paternity Act together and harmoniously, there can only be one conclusion with respect to the legislative intent in the context of the facts presented in this case. If an acknowledgment of parentage has been properly executed, subsequent recognition of a person as the father in an order of filiation by way of a paternity action cannot occur unless the acknowledgment has been revoked. Were we to accept Mazurek's and Sinicropi's contention that a biological father is always entitled to commence a paternity action and obtain an order of filiation where a child is born out of wedlock, the revocation provision in the Acknowledgment of Parentage Act, and especially the language regarding the equities of revocation, would be rendered meaningless in a legal battle between a biological father and an acknowledger.[7] Such a position is contrary to the legislative intent as outlined in this opinion.[8]

A case that draws many parallels and comparisons to the facts presented in the instant action is *Killingbeck, supra,* in which a child was born out of wedlock to the plaintiff mother. The plaintiff mother had a long-term relationship with Dennis Killingbeck, a brief relationship with Tony Rosebrugh, and then resumed the

---

[7] MCL 722.717(5), which provides, in part, that "[a]n order of filiation supersedes an acknowledgment of parentage," supports our conclusion that a father cannot be legally recognized under both the Acknowledgment of Parentage Act and the Paternity Act. Further, this statutory provision does not negate our ruling that a previously existing and unrevoked acknowledgment of parentage controls, because a challenged order of filiation under the circumstances presented would be vacated and treated as if it never existed.

[8] Under the position advocated by Sinicropi and Mazurek, a man who has physically, emotionally, and financially cared for a child after acknowledging paternity must always step aside for a biological father even if the acknowledger had cared for the child 5, 10, 15, or more years. This intent cannot be discerned from a harmonious reading of the acts.

relationship with Killingbeck, which eventually led to marriage and divorce. The child, however, was born before the marriage. Killingbeck had signed an acknowledgment of parentage following the child's birth and acted as his father for four years until DNA tests revealed that Rosebrugh was the biological father. The plaintiff filed a divorce action against Killingbeck and, about a year later, the plaintiff and Rosebrugh filed a paternity petition to revoke the acknowledgment of parentage. The parties' rights to file the paternity petition were not at issue.[9] The trial court revoked the acknowledgment of parentage because Killingbeck had not fathered the child, and it amended the birth certificate to reflect that Rosebrugh was the biological father, but the court also awarded Killingbeck the rights of a de facto parent on equitable theories. Eventually, the trial court awarded Rosebrugh and the plaintiff mother joint legal custody, awarded the plaintiff sole physical custody, awarded both Rosebrugh and Killingbeck specific parenting time, and ordered Rosebrugh to pay child support. *Killingbeck, supra* at 135-139.

On appeal, the *Killingbeck* panel addressed Rosebrugh's and the plaintiff's argument that Killingbeck should not have been afforded parental rights concerning the child on the basis of the equitable parent doctrine or equitable estoppel. The Court held, consis-

---

[9] Here, there was no need for Mazurek to file a separate action to revoke the acknowledgment of parentage because an ongoing custody action was in place, and thus a simple motion sufficed. MCL 722.1011(1) allows a claim for revocation to be filed as an original action or as a motion in an existing custody case. Although in *Killingbeck* a paternity petition was filed, the nature of the action focused on revocation of the acknowledgment. This Court did not address the propriety of the plaintiff and Rosebrugh filing a paternity action under the Paternity Act where an acknowledgment of parentage had been signed, nor did the Court examine the propriety of Rosebrugh joining with the plaintiff mother in requesting revocation of the acknowledgment.

tent with *Van, supra,* that, to the extent that the trial court relied on equitable parenthood or equitable estoppel, the order awarding Killingbeck parenting time was erroneous. *Killingbeck, supra* at 142-143. The Court also stated, however, that "[h]ad the trial court not revoked the acknowledgment of parentage, an order granting parenting time to Killingbeck would have been authorized." *Id.* at 143. The *Killingbeck* panel ruled that the acknowledgment of parentage established paternity and gave Killingbeck the status of a legal parent, making him eligible for parenting time under the Child Custody Act. *Id.* at 143-144. The Court continued by ruling that the trial court acted on a mistaken understanding of law when it "revoked the acknowledgment only because it thought that, nonetheless, Killingbeck could be granted parenting time." *Id.* at 144. The panel proceeded to discuss the "equity" provision in the acknowledgment revocation statute, and it vacated the trial court's order revoking the acknowledgment, stating:

> The record here evidences the trial court's conclusion that, notwithstanding the repeated protestations of plaintiff and Rosebrugh, the equities of this case justified Killingbeck's continuing right to parenting time. At the very least, the trial court might well have weighed the equities of this case differently in determining the motion to revoke Killingbeck's acknowledgment of parentage had it realized that Killingbeck's right to seek parenting time was at issue.
>
> Accordingly, while we reverse the order granting Killingbeck parenting time as a "de facto father," we also vacate the order revoking the acknowledgment of parentage as it may have been based on a mistake of law. On remand, the trial court shall reconsider the motion to revoke the acknowledgment in light of this opinion. [*Id.* at 144-145.][10]

---

[10] The Court declined to address how Rosebrugh's rights and status would be affected should the trial court decide not to revoke Killingbeck's

The *Killingbeck* decision in no way precludes our analysis and holding here. Rather, it provides us with support for the proposition that Powers's execution of the acknowledgment of parentage, in which Mazurek joined, gave Powers the status of legal father and gave him the opportunity and right to request custody and parenting time. *Killingbeck* further supports our position that revocation of the acknowledgment, despite clear and convincing evidence that Powers was not the biological father, still required consideration of the equities.

### C. CONSTITUTIONAL CLAIMS

The next issue we address is the constitutionality of precluding entry of an order of filiation in favor of Sinicropi under the facts presented. Sinicropi and Mazurek argue that Sinicropi's constitutional due process rights would be violated if he is deprived of the opportunity to litigate paternity and obtain an order of filiation, along with being deprived of any custodial claims to the child, despite the lack of any assertion or finding that he is unfit. We note that Sinicropi was not entitled to initiate a claim for revocation of the acknowledgment of parentage under MCL 722.1011 because under subsection 1 of the statute only the mother, the man who signed the acknowledgment, the child, or a prosecuting attorney can file a claim for revocation.

Sinicropi's constitutional arguments are premised on the single fact that he is the child's biological father. In *Hauser v Reilly*, 212 Mich App 184; 536 NW2d 865

---

acknowledgment on remand as no one challenged Rosebrugh's rights on appeal and the issue was not raised. *Killingbeck, supra* at 149-150. The Court left that issue for another appeal if necessary. *Id.* at 150. Here, there was no revocation by the trial court, leaving two fathers, and the issue of Sinicropi's rights and status has been raised.

(1995), this Court held that in the absence of a substantial parent-child relationship that stretches beyond a mere biological link, the plaintiff could not claim that he was deprived of his due process rights when he was denied standing to bring an action under the Paternity Act. *Id.* at 187-189. *Hauser* involved a child born in wedlock and a paternity action brought by the plaintiff who claimed that he, not the mother's husband, had fathered the child. The plaintiff in *Hauser* had never engaged in the daily supervision, education, protection, or care of the child. *Id.* at 185-186, 190. The Court, rejecting the plaintiff's constitutional claims, reasoned:

> While we sympathize with plaintiff [biological father], who was allegedly denied access to his child by defendant mother, we cannot agree that any putative father who could establish paternity by scientific means has a liberty interest in all proceedings concerning that child.
>
> It is true that both parents and children have a due process liberty interest in their family life. *In re Clausen*, 442 Mich 648, 686; 502 NW2d 649 (1993). The protected interest, however, is in the family life, not in the mere biological link between parent and child. A rapist has a biological link with a child conceived by that rape. If we held that a mere biological link would ensure a father of a liberty interest in the rights to a relationship with the child, the rapist would be entitled to due process protections. [*Hauser, supra* at 188-189.]

In *McHone v Sosnowski*, 239 Mich App 674, 675, 679; 609 NW2d 844 (2000), which also dealt with a child born in wedlock and a paternity action by a putative father, this Court noted that the putative father had established some degree of a relationship with the child. The *McHone* panel opined that the constitutional analysis in *Hauser* was obiter dictum, stating, "[S]ince the Court in *Hauser* found no parenting relationship of any kind to exist between the plaintiff and the child, an

analysis of a liberty interest based on a substantial parent-child relationship was not essential to the outcome of the case." *Id.* at 679. The Court declined to adopt *Hauser* with respect to a putative father's liberty interest in parenting his child. *Id.*

In *Aichele, supra,* a child was born in wedlock, and the plaintiff putative father commenced an action seeking custody, parenting time, and support. The plaintiff argued, in part, that "he had a protected liberty interest in his established relationship with the child." *Id.* at 167. The *Aichele* panel found that the portion of *Hauser* on which the plaintiff relied for that proposition was dictum, citing *McHone* in support. *Aichele, supra* at 168. This Court then ruled:

> There has yet to be any determination in this state that a putative father of a child born in wedlock, without a court determination of paternity, has a protected liberty interest with respect to a child he claims as his own. Indeed, we do not foresee recognition of this liberty interest in light of this state's strong adherence to the well-established presumption of legitimacy and its disinclination to interfere with married parents raising their children, absent compelling circumstances not shown here. [*Aichele, supra* at 168.]

It thus appears that the current state of the law in Michigan is that a putative father of a child born in wedlock has no constitutional liberty interest relative to commencing a paternity action and requesting custody or parenting time regardless of a biological connection to the child and the presence of a parent-child relationship.

In *Lehr v Robertson,* 463 US 248, 260-261; 103 S Ct 2985; 77 L Ed 2d 614 (1983), a case involving a child born out of wedlock, the United States Supreme Court stated that constitutionally protected parental rights do

not arise simply because of a biological connection between a parent and a child; rather, they require more enduring relationships.

While the present action concerns a child born out of wedlock and the sanctity of a marriage is not involved as part of the equation, the Legislature expressed that the execution of an acknowledgment of parentage creates a parent-child relationship in which the child "shall bear the same relationship to the mother and the man signing as the father as a child born or conceived during a marriage and shall have the identical status, rights, and duties of a child born in lawful wedlock effective from birth." MCL 722.1004. This legislative policy determination places the birth of a child out of wedlock when a proper acknowledgment of parentage is executed on nearly comparable footing to the birth of a child in wedlock.

Assuming, without deciding, that a biological father has a protected due process liberty interest in a situation where a child is born out of wedlock, where the biological father has a substantial or enduring parent-child relationship with the child, and where the biological father is otherwise prevented from obtaining an order of filiation and requesting custody, such liberty interest did not arise in the case at bar because there was no parent-child relationship between Sinicropi and the child. The child here was five years old when the DNA testing was performed, and Powers and Mazurek alone had cared for the child since birth and continued caring for him after Sinicropi learned that he was the biological father. We therefore reject Sinicropi's constitutional claims.[11]

---

[11] Sinicropi's and Mazurek's reliance on *In re Clausen, supra,* is misplaced. In that case, the Michigan Supreme Court noted that a natural parent's right to custody cannot be disturbed absent parental

D. ISSUES RELATED TO REVOCATION
OF AN ACKNOWLEDGMENT OF PARENTAGE

We next examine the trial court's decision not to revoke the acknowledgment of parentage and revocation proceedings in general. As indicated earlier, MCL 722.1011(3) provides, in part, that "[t]he party filing the claim for revocation has the burden of proving, by clear and convincing evidence, that the man is not the father and that, considering the equities of the case, revocation of the acknowledgment is proper." The plain and unambiguous language of the statute makes clear that simply because the man who signed the acknowledgment of parentage is shown by clear and convincing evidence not to be the child's biological father, the revocation inquiry is not at an end. Rather, the trial court must also determine whether there is clear and convincing evidence that revocation is proper given the equities of the case. See *Killingbeck, supra* at 144.

Here, DNA testing provided clear and convincing evidence that Powers was not the biological father, and the parties present no argument to the contrary. Our discussion regarding the equities of the case first re-

___

unfitness. *Id.* at 687. The facts in that case, however, are easily distinguishable from the facts in the present action, in which, under the Acknowledgment of Parentage Act, Powers is considered the natural and legal father and Sinicropi could not obtain an order of filiation deeming him the legal father in light of the unrevoked acknowledgment of parentage. *Clausen* involved a married couple, the DeBoers, who attempted to adopt a child in Iowa; however, the biological father was not made aware of the adoption petition, nor had his parental rights been terminated, and the adoption petition was denied when the biological father invoked his rights. But the DeBoers were already in Michigan with the child, and they initiated an action in this state seeking, in part, custody of the child. *Id.* at 657-659. The Supreme Court held that the DeBoers lacked standing to maintain a custody action against the biological father. *Id.* at 680-682. Here, Powers held the status of a natural father and had standing to request custody. *Clausen* simply did not address the factual circumstances and issues posed to this panel.

quires us to look at the nature of the trial court's rulings. In the fall of 2004, Mazurek filed a motion to dismiss Powers's custody action and to revoke the acknowledgment of parentage. The trial court denied the motion in a written opinion and order. However, the focus of the court's ruling was not on the "clear and convincing" and equity language contained in MCL 722.1011(3). Instead, the trial court first discussed equitable parenthood and *Van, supra,* which it found distinguishable because here there was an acknowledgment of parentage and a court order providing Powers with joint legal and physical custody. The trial court further determined that Powers was the legal parent and had standing to pursue custody. The trial court then proceeded to rule, on the basis of *Hawkins v Murphy,* 222 Mich App 664; 565 NW2d 674 (1997), that the doctrines of collateral estoppel and res judicata precluded dismissal of Powers's custody action and precluded revocation of the acknowledgment. The trial court essentially ruled that the issue of paternity could not be revisited. Apparently, the trial court was relying on the 2001 consent order of joint custody as support for invoking those doctrines. The trial court did not address the revocation motion as required by MCL 722.1011, specifically subsection 3.

We first note that *Hawkins* is easily distinguishable. In *Hawkins,* a child was born out of wedlock, and the plaintiff mother commenced a paternity action against the defendant, resulting in an order of filiation naming the defendant as the father. The parties subsequently married, but divorced soon afterwards. A consent judgment of divorce gave full custody to the plaintiff mother, and the defendant was allowed liberal visitation. The parties' contentious relationship resulted in several postjudgment court proceedings, and the plaintiff mother eventually moved to set aside the order of

filiation and to amend the judgment of divorce, claiming that the defendant was not the child's father. DNA testing revealed that the defendant was not the father, and the court suspended his visitation rights and support obligations. *Hawkins, supra* at 666-667.

The *Hawkins* panel held that res judicata barred the plaintiff mother's relitigation of paternity "when the parties had had a full and fair opportunity to litigate the issue in the paternity and divorce proceedings." *Id.* at 671. The Court stated that "the parties cannot raise the issue of paternity if it has already been conclusively determined in a prior adjudication." *Id.* (citation omitted). This Court further held that the doctrine of collateral estoppel barred relitigation of paternity "when the prior proceeding culminated in a valid final judgment, and the issue was actually and necessarily litigated." *Id.* at 671-672 (citation omitted).

Here, the consent order of joint custody was not the result of litigation over the issue of paternity and therefore did not determine paternity. Paternity was not an issue when Powers filed the motion for custody in 2001 because the acknowledgment of parentage had already established paternity. MCL 722.1004. Of course, the acknowledgment of parentage itself did not constitute prior litigation that could give rise to res judicata and collateral estoppel. And the acknowledgment was expressly subject to revocation under MCL 722.1011. Thus, the trial court erred in analyzing the revocation motion in terms of res judicata and collateral estoppel instead of taking into consideration the necessary analysis set forth in MCL 722.1011.

The trial court touched on the issue of revocation of the acknowledgment at a later hearing in May 2005 on Powers's motion to dismiss Sinicropi's paternity action. The trial court stated that it was not changing its

previous ruling with respect to Powers and the acknowl-
edgment, noting that Powers was operating under a
good-faith belief that he was the child's father. However,
the court also found that Sinicropi had standing relative
to his paternity complaint. In a June 2005 hearing on a
motion by Powers for child support based on the order of
filiation that had now been entered with respect to Sini-
cropi, Mazurek, now joined by Sinicropi, argued that
Powers's custody case should be dismissed because Sini-
cropi was the child's father and Powers recognized Sini-
cropi's status as father by requesting child support. In a
written opinion and order, the trial court reviewed the
facts of the case, again distinguished *Van*, determined that
Powers was the legal father pursuant to the acknowledg-
ment of parentage and the consent order of joint custody,
and acknowledged that it was effectively ruling that the
child had two fathers, i.e., Powers as the legal father and
Sinicropi as the biological father.[12] The trial court also
again employed the doctrines of res judicata and collat-
eral estoppel under *Hawkins*. Moreover, the trial court
stated, "It would be manifestly inequitable to allow
[Mazurek] to repudiate [Powers's] legal rights as a
father in these circumstances and allow her to revoke
her acknowledgment of parentage that was in effect for
years."[13]

We remand this case so that the trial court can revisit
the issue of revocation of the acknowledgment of parent-

---

[12] We point out that at the hearing on which the order was based, the trial
court at times referred to Powers as the legal and equitable father of the
child, and stated that it was applying the equitable parenthood doctrine.

[13] At the hearing, the trial court noted:

Now, I recognize that Mr. Sinicropi had no idea that he was the
biological father of this child until many years later. But, the
reality was . . . Mr. Powers carried on, believing himself to be the
father, acting, paying support, [and] acting in his role of father. So,
really what you would have [is an argument] that at this point in

age. We do so because the trial court never squarely addressed the issue of revocation within the four corners of the language of MCL 722.1011(3), which requires, in part, that Mazurek prove by clear and convincing evidence that revocation of the acknowledgment is proper "considering the equities of the case."[14] While the trial court's comments in prior proceedings clearly demonstrate the court's position that equity favors Powers, we nevertheless conclude that remand is proper, not only to allow the court to address the issue within the parameters of MCL 722.1011(3) without consideration of res judicata and collateral estoppel, but also for the court to render a decision knowing and appreciating full well that if revocation is not permitted this time, Sinicropi shall have absolutely no rights as a father because the order of filiation will be vacated consistently with this opinion.[15]

### E. CUSTODY DETERMINATION

For purposes of judicial expediency, we shall address the arguments regarding the trial court's custody deci-

time the Court should eliminate an equitable father [in favor] of [a] late coming legal father that no one had any idea about until the last few months.

[14] There is no need to review whether there was a mistake of fact regarding paternity or whether there is clear and convincing evidence that Powers is not the biological father given the unchallenged DNA evidence and the parties' agreement that Sinicropi fathered the child.

[15] Sinicropi argues that the trial court erred in denying his motion for disqualification. He did not, however, request a referral to the chief judge after the trial judge denied the motion for disqualification, and thus the issue is not preserved. MCR 2.003(C)(3)(a); *Welch v Dist Court*, 215 Mich App 253, 258; 545 NW2d 15 (1996). Moreover, Sinicropi's arguments fail because there is no record support for his claims, the arguments are speculative and lack specifics, there has been no showing of actual bias or prejudice, and he has not met the heavy burden of overcoming the presumption of impartiality. MCR 2.003(B)(1); *Cain v Dep't of Corrections*, 451 Mich 470, 495-497; 548 NW2d 210 (1996).

sion should the court again decline to revoke the acknowledgment of parentage. Our discussion in this section is to be read in the context of Powers's standing in the position of a man who has executed an unrevoked acknowledgment of parentage, with Sinicropi no longer having rights pursuant to the order of filiation. Numerous arguments are presented with respect to the trial court's rulings at the evidentiary hearing on the child's best interests and with regard to the custody determination.

First, we find no merit to Mazurek's assertion that the trial court should have applied the presumption in MCL 722.25(1) and determined that custody with her was preferable to custody with Powers. MCL 722.25(1) provides that "[i]f the child custody dispute is between the parent or parents and an agency or a third person, the court shall presume that the best interests of the child are served by awarding custody to the parent or parents, unless the contrary is established by clear and convincing evidence."

Mazurek's argument is based on the premise that Powers is a third person, not a parent. As we concluded earlier, the acknowledgment of parentage bestowed on Powers the status of natural parent. Thus, the custody dispute between Mazurek and Powers was between two parents and the standard best-interests analysis applies without the parental presumption. MCL 722.25(1). Sinicropi is a third person who does not have standing under the Child Custody Act because he cannot meet the third-party standing requirements of MCL 722.26b and MCL 722.26c.

Mazurek next argues that her move to Shepherd, Michigan, did not constitute a sufficient change of circumstances to warrant the trial court to entertain a change of custody. Pursuant to MCL 722.27(1)(c), a court may "[m]odify or amend its previous judgments

or orders for proper cause shown or because of change of circumstances." See *Foskett, supra* at 5. We conclude that the move was sufficient for the trial court to consider a change in custody because the move had or could have had a significant effect on the child's life. *Vodvarka, supra* at 511-513. This case involves the move of a custodial parent 89 miles from the other custodial parent, which would have changed the child's living environment and forced the child to attend two different schools.

Next, Mazurek contends that the trial court's factual findings are against the great weight of the evidence. We first note that when a modification of custody would change the established custodial environment of a child, there must be a showing that the change is in the child's best interests by clear and convincing evidence. MCL 722.27(1)(c). The trial court found that there was an established custodial environment with both Mazurek and Powers. Accordingly, in order to support the award of sole physical custody to Powers, there needed to be clear and convincing evidence that it was in the child's best interests to award custody to Powers. See *Foskett, supra* at 8 (Where there is a joint established custodial environment, neither parent's custody may be disrupted absent clear and convincing evidence.). The trial court found by clear and convincing evidence that the factors favored physical custody with Powers.

The best-interests factors are set forth in MCL 722.23 and provide that the court must consider:

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.
>
> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute.

Mazurek attacks each of the trial court's findings on the factors, raising various points. On many factors, Mazurek simply identifies facts that she believes the trial court did not consider. Presumably, then, Mazurek is asserting that had the trial court considered the evidence, it would have weighed the factor differently. Mazurek first contends that the trial court did not consider the fact that she was a stay-at-home mother or address the issue of religion under factor b (capacity and disposition of parties to give the child love, affec-

tion, and guidance and to continue the education and raising of the child in his or her religion). The trial court, however, did address religion and found that the parties had an equal capacity and disposition to raise the child as a Catholic, but found that this factor slightly favored Powers because of his sacrifices and efforts to put the child first. Although the trial court did not specifically mention that Mazurek was a stay-at-home mother, it did not need to comment on every matter in evidence. *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 452; 705 NW2d 144 (2005).

Mazurek next contends that the trial court made its finding regarding factor c (capacity and disposition of the parties to provide material needs) without any discussion of the testimony. The trial court stated, "I think that both parties clearly have an ability where they could provide the children with those." The court was only required to explicitly state its findings, not discuss the testimony. See *Foskett, supra* at 9. And Mazurek does not identify any evidence to indicate that the trial court's finding that Mazurek and Powers were equal under the factor was against the great weight of the evidence.

Mazurek also takes issue with the trial court's finding regarding factor d (length of time child had lived in stable environment and desirability of continuity) because it allegedly found in favor of a city, not a person. Although the trial court did not expressly state that the factor favored Powers, it is clear from the court's comments that it viewed the factor in favor of Powers. The trial court stated that it was desirable to maintain continuity by having the child be with Powers and his extended family in Jackson. The court did not find in favor of a city. Mazurek also contends that the trial court's consideration of school and community under

this factor constituted impermissible double weighing. However, the trial court did not mention school, and its reference to Jackson was in the context of discussing the child's ties to Powers and his extended family. In this regard, the community consideration of factor h naturally overlapped this factor and does not constitute impermissible double weighing. *Fletcher, supra* at 25-26; *Carson v Carson*, 156 Mich App 291, 299-300; 401 NW2d 632 (1986).

Mazurek additionally asserts that the trial court again found in favor of a location rather than a person under factor e (permanence of family unit of existing or proposed custodial home). The trial court stated, "I think he's had a degree of permanence with respect to that family unit here in Jackson County." It is readily apparent that the trial court was referring to Powers and presumably found that this factor favored him. We find that the trial court's finding under factor e was not against the great weight of the evidence.

Mazurek next contends that the trial court did not address Powers's acknowledgment of the danger of drinking while he was taking antidepressants under factor g (mental and physical health of the parties). The trial court found that the factor weighed equally. Again, the trial court need not comment on every fact in evidence. *MacIntyre, supra* at 452. But the trial court did mention Powers's depression and that it did not appear to interfere with his ability to effectively parent. And there was no evidence that Powers actually drank regularly or that his depression was not under control. Further, Mazurek knew Powers was on depression medication and would sometimes drink, yet she had no concerns about his ability to parent. The trial court's finding was not against the great weight of the evidence.

Mazurek also maintains that the trial court did not make a specific finding regarding factor h (the home, school, and community record of the child). The trial court noted that the child did very well in school and had received an award for turning in his homework on time for the entire year. It also stated that when a child did not do well that it was a possible indicator that the custodial placement was not the best place for the child. Implicitly, this indicated that the court found in favor of Powers, who had the child enrolled in a Jackson school. We conclude that the trial court's comments were sufficient to discern its finding, and its failure to more explicitly state its finding was not error requiring reversal.

Mazurek also takes issue with the fact that the trial court did not consider the child's preference under factor i (child's preference). The trial court stated that it could not consider the child's preference because none of the parties presented him for an interview. We note that the parties stood mute when the trial court made this statement, and there is no indication in the record that Mazurek wished or requested that the trial court speak to the child regarding his preference. This fact distinguishes the case from *Flaherty v Smith*, 87 Mich App 561, 564-565; 274 NW2d 72 (1978), *Lewis v Lewis*, 73 Mich App 563, 564; 252 NW2d 237 (1977), and *In re Custody of James B*, 66 Mich App 133, 134; 238 NW2d 550 (1975), in which the trial court either declined or refused to interview the children on request. We recognize that "[a] trial court must consider, evaluate, and determine each of the factors contained in [MCL 722.23]" when determining a child's best interests. *Mann v Mann*, 190 Mich App 526, 536; 476 NW2d 439 (1991). Assuming that the child, who was six years old when the custody hearing was conducted, was of sufficient age to express a preference, and assuming

that the trial court erred in not interviewing the child when neither party apparently wished to have the child appear, reversal is not warranted because had the child expressed a preference, it would not have changed the trial court's ruling, given the court's overall statements and strong feelings regarding what was best for the child, nor would it lead us to conclude that the court erred in awarding sole physical custody to Powers.

Mazurek next argues that the trial court's finding under factor j (willingness of one parent to foster child's relationship with the other parent) is against the great weight of the evidence because the evidence demonstrated that Powers was unwilling to accept the child's affection for people outside his own family. We disagree. Mazurek makes much of Powers's attitude regarding the child's siblings and the fact that he stated that she kidnapped the child when she took him to Shepherd. The latter statement is not an indication that Powers was unwilling to foster the child's relationship with Mazurek. He simply viewed as egregious Mazurek's act of removing the child to a town almost 90 miles away. Regarding the child's siblings, this factor only involves the parent-child relationship. MCL 722.23(j). Powers testified that he believed Mazurek and the child loved each other, and he made sure that the child called Mazurek when important events occurred during his parenting time. The trial court's finding that the factor did not favor Mazurek or Powers is not against the great weight of the evidence.

Mazurek next asserts that the trial court did not address factor k (domestic violence). This is incorrect. The trial court found that the factor favored neither Mazurek nor Powers as evidenced by its statement, "I didn't find any evidence of domestic violence." Mazurek mentions past behavior by Powers that she contends

should have been addressed by the trial court under this factor. But again, the trial court need not comment on every fact in evidence. *MacIntyre, supra* at 452. The trial court's failure to comment cannot be construed to mean that it did not consider the evidence. And we conclude that the alleged incidents, if true, did not constitute evidence of domestic violence such that the trial court's finding was against the great weight of the evidence.

Ultimately, Mazurek's primary complaint appears to be that the trial court gave undue weight to the consideration of the child's school, which the court considered as another factor under factor l (other relevant considerations), contrary to Mazurek's assertion that the trial court made no findings under this factor. A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances. *McCain v McCain*, 229 Mich App 123, 130-131; 580 NW2d 485 (1998). The *McCain* panel, quoting *Heid v AAA-Sulewski (After Remand)*, 209 Mich App 587, 596; 532 NW2d 205 (1995), stated:

> "We disapprove the rigid application of a mathematical formulation that equality or near equality on the statutory factors prevents a party from satisfying a clear and convincing evidence standard of proof. We are duty-bound to examine all the criteria in the ultimate light of the child's best interests." [*McCain, supra* at 130.]

The trial court placed considerable emphasis on the child's ties to his family, friends, and school in Jackson, and the desirability of maintaining stability for him. Mazurek and Powers agreed that the joint custody arrangement had worked fairly well when Mazurek lived in Jackson. The trial court believed that it was not in the child's best interests to keep the arrangement

and have him attend two different schools. Thus, it decided that there was clear and convincing evidence that it was in the child's best interests to remain with Powers in Jackson, where he had lived most of his life, where he had a good support system, where he attended school, and where he was well cared for and loved by Powers. In sum, we hold that the trial court did not abuse its discretion in awarding sole physical custody to Powers.

### V. CONCLUSION

We hold that an order of filiation cannot be entered under the Paternity Act if, under the Acknowledgment of Parentage Act, a proper acknowledgment of parentage was previously executed and has not been revoked. This is because, under MCL 722.1003 and MCL 722.1004, an unrevoked acknowledgment already legally established paternity and conferred the status of natural and legal father upon the man executing the acknowledgment, which in turn entitled him to seek custody or parenting time if desired and obligated him to pay support if appropriate. Accordingly, the trial court erred by ruling that the child has two legally recognized fathers under both the Acknowledgment of Parentage Act and the Paternity Act. The case is remanded to the trial court for further reflection on the issue of revocation of the acknowledgment of parentage. The trial court is directed to address revocation solely under MCL 722.1011(3), which requires, in part, that Mazurek prove by clear and convincing evidence that revocation of the acknowledgment of parentage is proper considering the equities of the case. Should the trial court again rule to reject revocation, the court shall pronounce Powers as the child's legal father, vacate the order of filiation and any orders based

thereon, including the child support orders relative to Sinicropi, and let stand the custody determination as between Powers and Mazurek because we find no errors warranting reversal with respect to that determination. Should the trial court decide to revoke the acknowledgment of parentage on remand, the court shall pronounce Sinicropi the child's legal father consistent with the order of filiation, vacate any orders based on Powers's status as the father, including the order granting him joint legal and sole physical custody, and enter any appropriate orders, upon hearing if necessary, in regard to custody and support as those matters relate to Sinicropi and Mazurek.

Remanded for proceedings outlined in and consistent with this opinion. We do not retain jurisdiction.