*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEREK DAVID ELYA II,

UNPUBLISHED
July 27, 2023

Plaintiff/Counterdefendant-Appellant,

v

No. 363489
Kalkaska Circuit Court
Family Division
LC No. 21-013814-DM

JAYME LYN ELYA,

Defendant/Counterplaintiff-Appellee.

Before: RIORDAN, P.J., and MARKEY and YATES, JJ.

PER CURIAM.

Plaintiff, Derek David Elya II, appeals by right the judgment of divorce dissolving his marriage to defendant, Jayme Lyn Elya, and granting her sole legal and physical custody of their minor daughters, KE and HE, and primary physical custody of their minor son, GE. For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

The parties married in August 2008. KE and HE were born prior to the marriage, but neither party contested plaintiff's paternity, and GE was born during the marriage. In the marriage, plaintiff and defendant assumed traditional roles, with plaintiff providing financial support and defendant managing the household and providing care for the children. Defendant, however, also worked outside the home, managing a restaurant.

The parties separated on April 24, 2021. Plaintiff left the marital home and moved into the camper that the parties kept on the property at plaintiff's motorcycle clubhouse about a mile and a half away. The camper had electricity and heat, but it did not have running water. Plaintiff testified that he could hook up water access for the camper, but it was "more convenient" to use water tanks and the bathrooms and kitchen in the clubhouse, which had running water.

Defendant admitted that she damaged plaintiff's property at one point during the marriage. Defendant explained that in 2016, she discovered a "Craig's List ad" that plaintiff had posted when defendant was pregnant with GE. The advertisement consisted of a full nude picture of plaintiff with a caption that stated "his age, his name, and that he was married with no STD's looking for a

good time." Defendant reacted by sending the advertisement to plaintiff's family and damaging plaintiff's motorcycle and truck.

Defendant also testified about several incidents in which plaintiff committed domestic violence against her in the presence of the children. In May or June 2021, plaintiff went to the home and made accusations against her, became violent, and threw a "BB type gun" that missed her "head by a couple inches." Plaintiff flipped the bed over, threw defendant into a closet, grabbed her with both hands, and choked her as he pushed her up off her feet against a wall. Plaintiff let go of defendant when one of their daughters opened the bedroom door.

The remaining incidents all occurred in front of GE. Defendant testified that on July 4, 2021, she did not feel safe returning to the marital home because plaintiff had entered the house and tried to smother defendant with a pillow as GE was asleep next to her. Defendant explained that this incident occurred because she had received a message from a man on her phone. Plaintiff drove defendant to the man's property to meet him and threatened him as plaintiff held a gun in his hand. Defendant, who was afraid to go home afterward, went to stay at her friend's house, but plaintiff went to the friend's home and ordered defendant to get GE out of the house. Defendant left the house with GE, and plaintiff followed them to the marital home. Upon returning to the marital home, plaintiff entered defendant's vehicle, took out a gun from defendant's purse, and told her, "I ought to blow your brains out right now," but he then told defendant that she should do it herself and handed her the gun.

Defendant also explained that plaintiff had "spit very large loogies" in her face and called her a "nasty whore" and that he punched holes in the walls and threw things through the walls. This resulted in GE committing the same or similar acts "because he watched his daddy do it." In another incident, plaintiff brought GE back to the marital home and got into an argument with defendant. Plaintiff tackled defendant, which caused defendant to suffer a broken finger, and he then took defendant's glasses off her face and "crushed them." Defendant "was crying and went and laid on the couch with [GE]," and then plaintiff pulled out his knife and slashed the couch from one side to the other with defendant and GE lying on the couch.

Plaintiff testified that the only "outburst" that he and defendant ever had was on April 14, 2021, when he caught defendant having an affair. Plaintiff filed a complaint for divorce on December 16, 2021, and he requested joint legal and physical custody of the minor children. In response, defendant filed a counterclaim for divorce, and she requested sole legal and physical custody of the three children. On March 7, 2022, the trial court entered a temporary order that maintained the status quo between the parties and allowed plaintiff to continue having parenting time with GE every other weekend and with the girls per agreement of the parties.[1] Thereafter, a bench trial was held on July 14, 2022. The trial court subsequently issued a written opinion and order. The court found that there existed an established custodial environment solely with defendant for all three children, thereby requiring clear and convincing evidence to change the established custodial environment. The trial court next found that the best-interest factors in MCL 722.23 weighed in favor of awarding defendant sole legal and physical custody of KE and HE. Additionally, the court concluded that the best-interest factors weighed in favor of awarding the

---

[1] The "status quo" was that the children were living with their mother.

parties joint legal custody of GE and awarding defendant primary physical custody of the child. A judgment of divorce later memorialized the court's custody determinations. Plaintiff appeals by right.

## II. CUSTODY

### A. STANDARDS OF REVIEW

In *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006), this Court, relying primarily on MCL 722.28, addressed the standards of review applicable in a child custody dispute, observing:

> There are three different standards of review applicable to child custody cases. The trial court's factual findings on matters such as the established custodial environment and the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction. In reviewing the findings, this Court defers to the trial court's determination of credibility. A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. Further, . . . questions of law in custody cases are reviewed for clear legal error. [Quotation marks and citations omitted.[2]]

### B. LEGAL FRAMEWORK

MCL 722.27 provides, in part:

> (1) If a child custody dispute has been submitted to the circuit court as an original action under this act or has arisen incidentally from another action in the circuit court or an order or judgment of the circuit court, for the best interests of the child the court may do 1 or more of the following:

> (a) Award the custody of the child to 1 or more of the parties involved or to others and provide for payment of support for the child, until the child reaches 18 years of age. . . . .

> (b) Provide for reasonable parenting time of the child by the parties involved, by the maternal or paternal grandparents, or by others, by general or specific terms and conditions. . . . .

---

[2] A court commits clear legal error when it makes a mistake in its choice, interpretation, or application of the law. *Shade v Wright*, 291 Mich App 17, 21; 805 NW2d 1 (2010). In the child-custody context, the trial court abuses its discretion when its decision is so grossly violative of fact and logic that it evidences passion or bias rather than the exercise of reason. *Shulick v Richards*, 273 Mich App 320, 324; 729 NW2d 533 (2006).

MCL 722.27(1)(c) provides that in a custody dispute, the trial court, for the best interests of the child at the center of the dispute, may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances." But the court is not permitted to "modify or amend its previous judgments or orders *or issue a new order* so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c) (emphasis added).[3] "These initial steps to changing custody—finding a change of circumstance or proper cause and not changing an established custodial environment without clear and convincing evidence—are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks omitted). MCL 722.27(1)(c) also provides:

> The custodial environment of a child is established if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort. The age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship shall also be considered.[4]

"Where no established custodial environment exists, the trial court may change custody if it finds, by a preponderance of the evidence, that the change would be in the child's best interests." *LaFleche v Ybarra*, 242 Mich App 692, 696; 619 NW2d 738 (2000).

---

[3] We are addressing a new or initial custody determination made as part of the divorce judgment after analysis of the statutory best-interest factors; therefore, a change of circumstances or proper cause did not need to be established, but a determination of the established custodial environment for purposes of the new order had to be assessed. *Kessler v Kessler*, 295 Mich App 54, 61; 811 NW2d 39 (2011).

[4] "An established custodial environment is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child." *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). "It is both a physical and a psychological environment that fosters a relationship between custodian and child and is marked by security, stability, and permanence." *Id.* "A custodial environment can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Id.* at 707. But "[t]he existence of a temporary custody order does not preclude a finding that an established custodial environment exists with the noncustodian or that an established custodial environment does not exist with the custodian." *Id.* at 706-707. Furthermore, "[a]n established custodial environment may exist with both parents where a child looks to both the mother and the father for guidance, discipline, the necessities of life, and parental comfort." *Id.* at 707.

In *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010), our Supreme Court discussed the next step of the analysis:

> If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case.

The statutory best-interest factors are set forth in MCL 722.23. And it is ultimately an assessment of the best-interest factors that governs a trial court's decision on custody. MCL 722.23 (the best interests of a child means the sum total of the enumerated factors, which are "to be considered, evaluated, and determined by the court"). "Where the trial court has failed to analyze the issue of child custody in accord with the mandates of MCL 722.23 and make reviewable findings of fact, the proper remedy is to remand for a new child custody hearing." *Bowers v Bowers*, 190 Mich App 51, 56; 475 NW2d 394 (1991). Findings and conclusions regarding the best-interest factors "need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre v MacIntyre*, 267 Mich App 449, 452; 705 NW2d 144 (2005). But "the record must be sufficient for this Court to determine whether the evidence clearly preponderates against the trial court's findings." *Id.*

MCL 722.26a addresses the concept of "joint" custody, and it provides, in pertinent part, as follows:

> (1) In custody disputes between parents, the parents shall be advised of joint custody. At the request of either parent, the court shall consider an award of joint custody, and shall state on the record the reasons for granting or denying a request. In other cases joint custody may be considered by the court. The court shall determine whether joint custody is in the best interest of the child by considering the following factors:
>
> (a) The factors enumerated in [MCL 722.23].
>
> (b) Whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child.

In *Kuebler v Kuebler*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362488); slip op at 28, this Court discussed MCL 722.26a and *legal* custody, stating:

> Joint custody can refer to joint physical or joint legal custody. Joint legal custody, under MCL 722.26a, means that the parents shall share decision-making authority as to the important decisions affecting the welfare of the child. In order for joint custody to work, parents must be able to agree with each other on basic issues in child rearing—including health care, religion, education, day to day decision-making and discipline—and they must be willing to cooperate with each other in joint decision-making. Under MCL 722.26a(1), when joint custody is considered, the trial court shall determine whether joint custody is in the best

interests of the children by considering the best-interest factors in MCL 722.23 and whether the parents will be able to cooperate and generally agree concerning important decisions affecting the welfare of the child. [Quotation marks, citations, and brackets omitted.]

## C. ESTABLISHED CUSTODIAL ENVIRONMENT – DISCUSSION AND RESOLUTION

Plaintiff first argues that the trial court erred by finding that there was an established custodial environment solely with defendant, which led the court to erroneously apply the clear-and-convincing-evidence standard to plaintiff's request for joint custody. We initially conclude that plaintiff failed to preserve an argument regarding the established custodial environment. Before the bench trial took place, the parties submitted trial briefs, and while defendant discussed the law regarding a determination on the established custodial environment, plaintiff did not mention anything concerning the established custodial environment. At the conclusion of the trial, the court ordered the parties to submit written closing arguments. Defendant first submitted her closing argument, contending that the established custodial environment of all three children existed solely with her. Plaintiff then filed his closing argument, again saying nothing whatsoever regarding the established custodial environment. Plaintiff instead simply argued that the best-interest factors favored him; he mentioned nothing about the burden of proof and made no claim that there was a joint established custodial environment. Now on appeal, after staying silent on the matter below, plaintiff complains that the trial court erred in its determination of the established custodial environment. Having never placed into issue the question of the children's established custodial environment, plaintiff waived the argument that he poses on appeal. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 3 ("By failing to raise this issue in the trial court, plaintiffs deprived the trial court of the opportunity to correct it in a timely and equitable manner and waived the error.").[5]

Moreover, even had the issue been preserved, the trial court's ruling that the children's established custodial environment was solely with defendant was not against the great weight of the evidence, i.e., the evidence did not clearly preponderate in the opposite direction. There was more than adequate evidence demonstrating that the children, over an appreciable period of time, naturally looked to defendant, with whom they lived, for guidance, discipline, the necessities of life, and parental comfort. The evidence established that plaintiff was not involved in the lives of HE and KE, that he did not exercise consistent parenting time with the girls, that there was no real bond between plaintiff and his daughters, and that HE and KE did not look to plaintiff for guidance, discipline, the necessities of life, or parental comfort. The question is closer with respect to GE

_____

[5] MCR 2.517 addresses findings by a court in a bench trial, and subsection (A)(7) provides that "[n]o exception need be taken to a finding or decision." Although plaintiff did not need to file an objection or exception after the court issued its opinion and order to preserve a challenge to the ruling on the children's established custodial environment, plaintiff did have to raise an argument on the issue in his trial brief or written closing argument in order to preserve his appellate argument.

because a close relationship developed between father and son, and GE sought guidance and parental comfort from plaintiff. But defendant provided GE with needed discipline and the necessities of life, and she also offered him greater security, stability, and permanence than plaintiff, especially in light of plaintiff's troubling conduct and behavior at times. And GE's physical environment was with defendant most of the time. In sum, we cannot conclude that the court's decision was against the great weight of the evidence.

## D. BEST-INTEREST FACTORS – DISCUSSION AND RESOLUTION

Plaintiff argues that the trial court erred by not awarding him joint legal custody with respect to KE and HE and by not awarding him joint physical custody in relation to GE. The trial court found that custody factors (a) and (i) favored defendant as to KE and HE and favored neither party in regard to GE. The court found that factors (b), (c), (d), (h), (j), (k), and (l) favored defendant as to all the children; that factors (e), (f), and (g) were neutral with respect to both parties; and that no factors favored plaintiff. Plaintiff challenges the trial court's findings regarding factors (b), (c), (d), (g), (j), (k), and (l).

Factor (b) concerns "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). "[T]his factor deals with the *capacity* and *disposition* of the parties, not whether each party has in fact had the opportunity to demonstrate that capacity and disposition." *Demski v Petlick*, 309 Mich App 404, 447-448; 873 NW2d 596 (2015). Plaintiff did not see KE or HE as often as GE, and his primary means of interacting with his daughters was through phone calls. Defendant testified that KE and HE did not want to interact with plaintiff because of the way he made them feel, his name-calling, and his criticism of their appearance. Additionally, defendant testified that she always attended the children's parent teacher conferences and that plaintiff "never attended one single conference."

Regarding GE's education, plaintiff explained that he communicates with the principal when he drops GE off at school on Monday mornings and that he helps GE with his homework. But it was defendant who addressed GE's issues in school regarding his acts of spitting on and hitting other students. Defendant testified that she worked with GE to address these issues and that he "has come really, really far in the last year mentally." Moreover, defendant enrolled GE in a school program to help improve his grades, and she always attended GE's parent teacher conferences.

The trial court's finding that factor (b) favored defendant was not against the great weight of the evidence because although plaintiff provided GE with love, affection, and guidance, the evidence demonstrated that defendant took the active role in the children's education and arranged counseling and additional support as needed.

Factor (c) regards "[t]he capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs." MCL 722.23(c). This factor "is intended to evaluate the parties' *capacity* and *disposition* to provide for the children's material and medical needs." *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). "Thus,

this factor looks to the future, not to which party earned more money at the time of trial, or which party historically has been the family's main source of income." *Id.*

Plaintiff testified that he was capable of earning up to $75 per hour, but he only received $55 per hour the last time that he got paid. Plaintiff explained that he had a flexible work schedule, allowing him to take time off from work to stay home with the children, and he was presently able to provide for the children's needs with respect to food and clothing. Although plaintiff stopped working after he was involved in a motorcycle crash in August 2021, he testified that he had recovered and was able to work as of the date of the bench trial. Defendant testified that she managed a restaurant in Gaylord and that she earned an annual salary of "around eighty thousand." Additionally, trial testimony indicated that she too had a flexible work schedule that allowed her to leave work to care for the children's needs.

The trial court found that factor (c) favored defendant based on testimony that she handled the cooking, grocery shopping, and cleaning during the marriage and that plaintiff had not contributed financially to support the children since his accident in August 2021. Although the court did not appear to focus on the parties' ability to provide for the children's material and medical needs in the future, it is quite apparent that the court looked at past practices to assess the parties' capacity and disposition to provide for the children's future needs. We cannot conclude that the court's determination was against the great weight of the evidence.

Factor (d) concerns "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). "Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski*, 309 Mich App at 448-449. The trial court found that this factor favored defendant because plaintiff was living in a camper at the time of the bench trial and defendant was living in the marital home. The trial court reasoned that factor (d) favored defendant because she had "continued to maintain the stability, consistency and security of the marital home for all three (3) children." We agree that the marital home, as managed by defendant, provided the children with a stable, satisfactory environment. In contrast, plaintiff's camper did not even have running water. Although plaintiff testified that he wanted to build a new home on the vacant lot owned by the parties, plaintiff did not receive the vacant lot as part of the judgment of divorce. There was no other testimony for the court to rely on in determining whether plaintiff would be able to provide the children with a stable, satisfactory environment. In light of the available testimony, we cannot conclude that the trial court's finding that this factor favored defendant was against the great weight of the evidence.

Factor (g) regards "[t]he mental and physical health of the parties involved." MCL 722.23(g). This factor pertains to whether the parties had "physical or mental health issues that inhibited their ability to parent." *Wright v Wright*, 279 Mich App 291, 302; 761 NW2d 443 (2008). The trial court found that this factor favored neither party because defendant and plaintiff were "currently in good physical and mental health." Plaintiff argues that this factor should have favored him because the record showed that defendant suffered from mental health issues that impacted her ability to parent the children. Defendant openly testified about her struggle with anxiety and depression during the early stages of the separation, and she proactively sought treatment from a doctor. Defendant indicated that she felt like she has "a very normal relaxed life now." And defendant testified that her current mental state does not stop her from parenting her

children.  Additionally, plaintiff acknowledged that defendant was "a great parent to our kids" and that she did "well for our kids."  We conclude that the evidence supported the trial court's finding that factor (g) did not favor either party.

Factor (j) addresses "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents."  MCL 722.23(j).  The trial court found that factor (j) favored defendant because of an incident in July 2022 when defendant accommodated plaintiff's schedule by altering the parenting time for a weekend.  There was evidence that both parties were willing to facilitate and encourage a close and continuing parent-child relationship.  Indeed, both parties testified about their belief in fostering a healthy relationship between the children and the parties.  But evidence of plaintiff's abusive conduct and behavior directed at defendant in GE's presence in no way assisted in facilitating and encouraging a close and continuing relationship between GE and defendant.  We conclude that the court's finding on this factor was not against the great weight of the evidence.[6]

Factor (k) regards "[d]omestic violence, regardless of whether the violence was directed against or witnessed by the child."  MCL 722.23(k).  The trial court found that this factor favored defendant because there was evidence that plaintiff had "a history of violent outbursts towards [defendant] in the presence of the minor children."  The court found defendant's testimony to be credible regarding the incidents of domestic violence perpetrated by plaintiff.  Plaintiff argues that the trial court erred by noting that defendant's acts of violence occurred outside the presence of the minor children when factor (k) indicates that domestic violence is relevant *regardless* of whether it was witnessed by the children.  We agree with plaintiff to the extent that the trial court could not dismiss the acts of violence committed by defendant simply because they did not occur in front of the minor children, but we are not convinced that such happened in this case.  Rather, it is evident that the court assigned less weight to defendant's acts of violence that occurred outside the presence of the minor children than it assigned to plaintiff's acts of violence that occurred in the presence of the minor children.  Such weighing of the evidence was within the trial court's discretion.  Defendant's testimony revealed that plaintiff committed one act of domestic violence when either KE or HE was present in the house and engaged in four instances of domestic violence in front of GE.  Defendant testified that plaintiff's act of spitting "loogies" in her face even resulted in GE spitting in her face.  We conclude that the trial court's finding that factor (k) favored defendant was not against the great weight of the evidence.

Factor (*l*) concerns "[a]ny other factor considered by the court to be relevant to a particular child custody dispute."  MCL 722.23(*l*).  "Factor *l* is a 'catch-all' provision."  *McIntosh v McIntosh*, 282 Mich App 471, 482; 768 NW2d 325 (2009).  The trial court found that factor (*l*)

---

[6] Plaintiff argues that defendant's act of sending a nude picture of plaintiff to plaintiff's family should have resulted in a finding that this factor weighed against defendant and in favor of plaintiff.  Defendant, however, obtained the nude picture of plaintiff from Craig's List after plaintiff posted an advertisement "looking for a good time."  Indeed, plaintiff posted the Craig's List advertisement while defendant was pregnant with GE.  We find plaintiff's argument unavailing.

favored defendant because she had "always been fully involved and focused on the needs of the children" and that she was "a steady, reliable and attentive presence in the children's lives and has never put their health or wellbeing at risk of harm." Plaintiff argues that the court should not have weighed this factor in favor of defendant because the parties "mutually decided this while they were together." Regardless of whether the parties mutually agreed or not, the testimony of defendant and plaintiff supported the trial court's findings. Accordingly, we conclude that the court's determination that factor (*l*) favored defendant was not against the great weight of the evidence.

Finding no error with respect to the trial court's findings on the statutory best-interest factors, we have no basis to reverse the court's rulings on legal custody relative to the girls and physical custody in connection with GE. Plaintiff argues that joint legal custody is appropriate in relation to KE and HE because the parties can agree on major decisions concerning the welfare of their daughters, as proven by the fact that the court awarded the parties joint legal custody in regard to GE. See MCL 722.26a(1)(b). The circumstances regarding HE and KE were completely different than those pertaining to GE. The trial court did not specifically discuss the parties' ability to cooperate and agree on important decisions with respect to the girls, but the court's findings on the best-interest factors so overwhelmingly supported an award of sole legal custody that we are not prepared to reverse the court's legal custody decision. And even plaintiff seemed to recognize that he should not interfere with decision-making relative to HE and KE given the nature of his relationship with the girls and their ages.[7]

We affirm. Having fully prevailed on appeal, defendant may tax costs under MCR 7.219.


/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ Christopher P. Yates

---

[7] Plaintiff presents a cursory argument absent legal analysis or recitation of any authority that he should be awarded expanded parenting time if we rule against him on the custody issue. We do not consider this argument because it is inadequately briefed. See *Mudge v Macomb Co*, 458 Mich 87, 105; 580 NW2d 845 (1998) ("It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.").