*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BRIANN ROBERSON,

Plaintiff-Appellee,

v

JACOB RHINEHART ROBERSON,

Defendant-Appellant.

UNPUBLISHED
December 12, 2024
9:49 AM

No. 370304
Midland Circuit Court
LC No. 22-001600-DM

Before: GADOLA, C.J., and K. F. KELLY and REDFORD, JJ.

PER CURIAM.

In this custody case, defendant-father, Jacob Rhinehart Roberson, appeals as of right from the judgment of divorce in which the parties were granted joint legal custody, but plaintiff-mother, BriAnn Roberson, was granted physical custody of the parties' minor child, TMR. Defendant challenges the trial court's finding that there was only an established custodial environment with plaintiff and challenges the trial court's best-interest findings. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The parties married in 2018 and lived together in a home in Sanford, Michigan. During their marriage, they had one child, TMR, who was two years old at the time of the divorce trial. Defendant had one other child, AER, from a previous relationship, who was nine years old at the time of the divorce trial. Both parties worked full-time jobs. Plaintiff worked as a histotechnologist, a specialized medical lab analyst, in Sanford. Defendant worked as a labor foreman for a bridge contractor. His work required him to travel to worksites across the state of Michigan. This work was seasonal and defendant was laid off from work during winter months.

Plaintiff filed for divorce in October 2022. Defendant moved out of the marital home into another home in Sanford. In May 2023, the trial court entered a temporary custody order, under which the parties shared joint legal and physical custody of TMR. Although characterized as a week-on/week-off schedule, the order provided that if defendant was working during his week of parenting time, he would drop TMR off at plaintiff's house at 5:30 a.m. and pick her up at approximately 6:00 p.m. when he returned from work. Plaintiff objected to this recommendation,

arguing that joint physical custody and parenting time did not serve TMR's best interests. The parties adhered to this parenting schedule during the pendency of this case.

Seven months after the temporary order was entered, the trial court held a divorce trial in December 2023. The trial court concluded that TMR only had an established custodial environment with plaintiff. The trial court granted the parties joint legal custody and plaintiff sole physical custody of the minor child. The trial court ordered that if the parties could agree, they could establish parenting time, and, if they could not agree, parenting time would be performed pursuant to the Midland County Co-Parenting Plan. Subsequently, the trial court entered a judgment of divorce which provided the same. This appeal followed.

## II. STANDARD OF REVIEW

In a custody dispute, "all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue." MCL 722.28 Under the great weight of the evidence standard, this Court "may not substitute [its] judgment on questions of fact unless the facts clearly preponderate in the opposite direction." *Yachcik v Yachcik*, 319 Mich App 24, 31-32; 900 NW2d 113 (2017) (quotation marks and citation omitted; alteration in original). "In reviewing the findings, this Court defers to the trial court's determination of credibility." *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006).

An abuse of discretion exists when the trial court's decision is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." *Fletcher v Fletcher*, 447 Mich 871, 879-880; 526 NW2d 889 (1994). "A clear legal error occurs when the trial court incorrectly chooses, interprets, or applies the law." *Frowner v Smith*, 296 Mich App 374, 381; 820 NW2d 235 (2012) (quotation marks, ellipsis, and citation omitted).

## III. ESTABLISHED CUSTODIAL ENVIRONMENT

Defendant first argues that the trial court erred by finding that there was only an established custodial environment with plaintiff. Defendant contends that TMR had an established custodial environment with both parents. Because defendant has given this Court no reason to disturb the trial court's finding regarding the child's established custodial environment, we disagree.

A child has an established custodial environment "if over an appreciable time the child naturally looks to the custodian in that environment for guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). Whether an established custodial environment exists is a question of fact that this Court must affirm unless the trial court's finding is against the great weight of the evidence. MCL 722.28; *Berger v Berger*, 277 Mich App 700, 706; 747 NW2d 336 (2008). An established custodial environment

> is one of significant duration in which a parent provides care, discipline, love, guidance, and attention that is appropriate to the age and individual needs of the child. It is both a physical and a psychological environment that fosters a

relationship between custodian and child and is marked by security, stability, and permanence. [*Berger*, 277 Mich App at 706.]

"An established custodial environment may exist in more than one home and can be established as a result of a temporary custody order, in violation of a custody order, or in the absence of a custody order." *Marik v Marik*, 325 Mich App 353, 361; 925 NW2d 885 (2018) (quotation marks and citation omitted). To determine whether an established custodial environment exists, the trial court may consider factors including "[t]he age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship.' " *LaFleche v Ybarra*, 242 Mich App 692, 696; 619 NW2d 738 (2000) (alteration in original), quoting MCL 722.27(1)(c).

The trial court found that TMR had an established custodial environment with plaintiff but not defendant. The trial court explained that plaintiff was TMR's primary caregiver since birth. Before the separation, defendant had a limited role in TMR's life. After the separation, defendant enlarged his role, but he did not provide care for TMR independent of plaintiff for a long enough time for TMR to have a establish a custodial environment with him.

This finding was not against the great weight of the evidence. During the marriage, plaintiff was TMR's primary caregiver. She fed TMR, changed her diaper, tended to her basic needs, and took her to medical appointments. Defendant refused to assist in childcare without getting in a fight with plaintiff. Likewise, defendant had limited interaction with TMR. He traveled extensively for work. When he got home from work in the evenings, he ate, showered, and watched television. If TMR was in bed already, he did not see her. If she was still awake, he sat on the couch watching television while TMR did "tummy time" on the floor nearby. During his layoff and weekends at home, defendant chose to spend time working on his cars in the garage or with his friends instead of with TMR. Plaintiff's sister babysat TMR and AER even when defendant was home in the winter.

After the separation, the parties entered into a temporary order that provided that they would share a week-on/week-off schedule. Although framed as an equal split of parenting time, the order did not actually provide for equal parenting time. Instead, during the weeks that defendant worked, he was required to drop TMR off at plaintiff's house in the morning and could pick her up in the evenings when he returned from work. In practice, this meant that defendant brought TMR to plaintiff at 5:30 a.m. and picked her up at 6:00 p.m. TMR went to bed at approximately 8:30 p.m. Accordingly, defendant's time with TMR was drastically less than the simple week-on/week-off schedule over the seven-month period of the temporary order.

Although there was record evidence that defendant "stepped up" after the separation, defendant only did this for limited windows of time during the seven months under the temporary order. Plaintiff continued to be the primary caregiver by caring for TMR during her weeks and for portions of defendant's weeks. In addition, record evidence supported that although defendant expressed love and affection to TMR after the separation, TMR did not reciprocate that affection. This evidence supported that TMR was not under defendant's care "over an appreciable time." MCL 722.27(1)(c). Given the limited amount of time that TMR was under defendant's care, we cannot conclude that this finding was against the great weight of the evidence. See *Yachcik*, 319 Mich App at 31-32.

Defendant argues that the trial court erred by focusing on the circumstances of TMR's entire life and was required by this Court's precedent to only consider the seven-month period under the temporary order. Defendant relies for support on *Hayes v Hayes*, 209 Mich App 385; 532 NW2d 190 (1995). However, *Hayes* does not support this position. In *Hayes*, this Court explained that "the focus is on the circumstances surrounding the care of the children in the time preceding trial, not the reasons behind the existence of a custodial environment." *Id*. at 388. In context, the quoted language stands for the proposition that the mere existence of a custody order does not establish a custodial environment. The trial court must focus on the actual circumstances of a child's care, rather than the reason behind those circumstances. *Hayes* cannot be reasonably read to stand for the proposition that only the months—in this case the seven months under the temporary order—leading up to trial may be considered when determining the established custodial environment of a two-year-old.

Defendant cites no other authority that supports that the trial court should not have considered the entirety of TMR's life given the brevity of her life so far. The determination whether an established custodial environment exists is a fact-intensive inquiry. See *LaFleche*, 242 Mich App at 696 (explaining that the trial court may consider factors such as "[t]he age of the child, the physical environment, and the inclination of the custodian and the child as to permanency of the relationship). At the time of trial, TMR was only two years old. The care TMR received over her entire life was highly relevant to who she looked to for "guidance, discipline, the necessities of life, and parental comfort." MCL 722.27(1)(c). Accordingly, the trial court did not commit legal error by considering the entirety of TMR's life in its established custodial environment determination.

Defendant also argues that the trial court erroneously concluded he needed plaintiff's assistance for childcare because he was required to utilize her assistance under the temporary order. This argument is not aimed at the circumstances of TMR's care, but the reasons underlying that care. *Hayes*, 209 Mich App at 388. The temporary order provided that defendant drop off TMR with plaintiff when he went to work and pick her up after work, and, to his credit, he followed the provisions of that order. However, the reality of the circumstances is that, even during his parenting-time weeks, plaintiff provided a significant amount of care in addition to her own weeks.

Defendant failed to point to any evidence that clearly preponderates against the trial court's finding that the child had an established custodial environment with plaintiff alone. Accordingly, we conclude that the trial court's determination regarding the child's established custodial environment was not against the great weight of the evidence. See *Yachcik*, 319 Mich App at 31-32.

## IV. BEST-INTEREST FACTORS

Defendant next argues that the trial court's findings regarding three of the best-interest factors were against the great weight of the evidence. Because defendant has given this Court no reason to disturb the trial court's finding regarding the best-interest factors, we disagree.

Above all other considerations, the trial court has a "duty to ensure that the resolution of any custody dispute is in the best interests of the child." *Harvey v Harvey*, 470 Mich 186, 191-192; 680 NW2d 835 (2004). In its custody determination, the trial court must evaluate, consider,

and determine the "sum total" of the factors listed in MCL 722.23. The trial court must consider each factor and explicitly state its findings and conclusions regarding the factor. *Spires v Bergman*, 276 Mich App 432, 443; 741 NW2d 523 (2007). "[A] trial court's findings on each factor should be affirmed unless the evidence clearly preponderates in the opposite direction." *Kubicki v Sharpe*, 306 Mich App 525, 542; 858 NW2d 57 (2014) (quotation marks and citation omitted).

In its best-interest analysis, the trial court found by a preponderance of the evidence that the parties were equal or the factor was inapplicable, except for Factors (a), (b), and (*l*), which the trial court concluded favored plaintiff.[1] Defendant challenges the trial court's findings as to Factors (a), (b) and (*l*).

First, Factor (a) considers "[t]he love, affection, and other emotional ties existing between the parties involved and the child." MCL 722.23(a). The trial court found that this factor favored plaintiff after noting that defendant's work schedule limited the amount of time he could spend with TMR and that, before entry of the temporary order, defendant did not spend any time with TMR outside "tummy time" in the evenings. When defendant was home, he chose to spend his time at home in his garage or with friends instead of with TMR. The trial court noted that defendant disagreed with plaintiff's testimony that he did not spend time with TMR during the marriage and that after entry of the temporary order he was able to spend more time with TMR. The trial court also explained that although both parties testified that TMR looked to them for care and comfort, plaintiff testified that TMR did not reciprocate defendant's affections during pickups and drop-offs. Because the record supports this finding, we cannot conclude that the trial court erred when it concluded that this factor favored plaintiff.

Defendant argues that the trial court did not make a credibility determination and that the evidence largely supports that TMR was affectionate toward him. In support of this, defendant argues that the one unbiased witness, Jennifer Parker, who was the mother of defendant's older child and defendant's friend, testified that she observed TMR acting affectionate toward defendant. Although the trial court did not expressly state that it found plaintiff's testimony more credible than defendant's or Parker's testimony, it is apparent that the trial court found plaintiff's testimony more credible. We defer to the trial court's ability to judge the witnesses' credibility, see *Sinicropi*, 273 Mich App at 155.

Defendant also argues that the trial court committed reversible error by weighing Factor (a) in favor of plaintiff "by virtue of [that parent] being able to spend significantly more time with [the child]" as a result of the other parent's work demands. *Bofysil v Bofysil*, 332 Mich App 232, 246; 956 NW2d 544 (2020). In that case, this Court held that the trial court erroneously weighed Factors (a) and (b) for solely relying on the fact that one parent worked and the other was a stay-at-home parent. *Id.* (explaining that "[t]he fact that the parties agreed before conceiving that one

---

[1] Premised on his argument that TMR had an established custodial environment with him, defendant argues that the trial court erroneously employed the preponderance-of-the-evidence standard to the best-interest analysis. The trial court employed the correct standard. Because the proposed change would not alter the child's established custodial environment, the moving party must only show that the proposed change is in the child's best interests by a preponderance of the evidence. See *Pierron v Pierron*, 486 Mich 81, 86; 782 NW2d 480 (2010).

parent would stay at home to raise the child while the other would financially support the family does not equate with one parent loving the child more or having more affection for the child"). This case is dissimilar to *Bofysil*. Both parties in this case had full-time jobs. More importantly, the trial court did not solely rely on the fact that defendant had a job. Instead, the trial court concluded that defendant had a job that limited the amount of time he spent with TMR, and that, when he had time at home, he chose not to spend that time with TMR. The trial court credited defendant's decision not to spend time with TMR during the marriage for the lack of emotional ties between them after the separation. For these reasons, we conclude that defendant has not shown that the evidence preponderates against the trial court's finding that Factor (a) favored plaintiff.

Second, Factor (b) considers "[t]he capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." MCL 722.23(b). "[T]his factor deals with the capacity and disposition of the parties, not whether each party has in fact had the opportunity to demonstrate that capacity and disposition." *Demski v Petlick*, 309 Mich App 404, 447-448; 873 NW2d 596 (2015) (emphasis omitted). The trial court found that this factor favored plaintiff after explaining that because of defendant's work schedule, plaintiff primarily provided TMR care since birth. Further, the trial court noted that defendant was unwilling to help with childcare during the marriage. He only helped after fighting with plaintiff. The trial court acknowledged that defendant started actively parenting TMR after the parties separated, but cited plaintiff's testimony that defendant did not spend more time with TMR when he was laid off in the winter and that TMR attended daycare when defendant was home during the marriage. Because the record supports these findings, we cannot conclude that the trial court's finding was against the great weight of the evidence.

Defendant first raises the same argument that the trial court erroneously considered defendant's work under this factor. See *Bofysil*, 332 Mich App at 246. We reject this argument for the same reasons we rejected it in relation to Factor (a). Defendant also argued that the trial court erred by crediting plaintiff's testimony regarding defendant's ability to parent during the marriage while discounting the evidence that showed his ability to provide TMR with love, affection, and guidance after the separation. We disagree. The evidence established that defendant failed to participate in childcare when he was home from work during the marriage. Although defendant became more involved under the temporary order, his upcoming work projects included sites 1 ½ to 2 ½ hours away, which necessarily limited the time he was able to care for TMR. Defendant expressed that he wanted to rely on family friends to watch TMR while he was at work. Comparatively, plaintiff, TMR's primary caregiver since birth, was involved in all medical decisions and planned to continue to care for her.

Additionally, defendant argues that the trial court erred by considering evidence from before the temporary order was entered in its weighing of Factor (b). He cites no authority in support of this proposition. In the context of determining if a change of circumstances had occurred, this Court has previously held that "the trial court was limited to basing its decision on events occurring after entry of the most recent custody order." *Vodvarka v Grasmeyer*, 259 Mich App 499, 501; 675 NW2d 847 (2003). However, this Court explained that this limitation was applicable only to the issues of whether there was a change of circumstances or proper cause. *Id.* at 514-515. There is no limitation on the trial court considering all evidence in the record in its

best-interest analysis. See *id*. Accordingly, the trial court was permitted to consider evidence relevant to defendant's disposition and capacity from before entry of the temporary order.

Lastly, Factor (*l*) considers "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." MCL 722.23(*l*). The trial court found that this factor favored plaintiff after surveying testimony regarding defendant's work schedule and its impact on TMR. Defendant's upcoming work projects included locations 1 ½ to 2 ½ hours away from home. The trial court noted that this commute was unsustainable in relation to the parenting-time schedule. Moreover, under the current schedule, defendant woke TMR up shortly after 5:00 a.m. to take her to plaintiff's house. Testimony demonstrated that this had a negative impact on TMR during defendant's weeks, including a crabby mood, taking more naps than usual, constipation, and behavioral issues such as biting and hitting. These behaviors did not occur during plaintiff's weeks. This finding was not against the great weight of the evidence.

Defendant argues that the trial court committed legal error by failing to consider that defendant facilitated a relationship between TMR and her older sister under Factor (*l*). We disagree. In *Wiechmann v Wiechmann*, 212 Mich App 436, 440 n 2; 538 NW2d 57 (1995), this Court stated that "[a]lthough the maintenance of the sibling bond is not explicitly mentioned as a factor to be considered in determining the best interest[s] of a child in a custody dispute, we believe that such consideration is appropriate under several of the statutory factors under MCL 722.23 . . . ." Accordingly, sibling bond is an appropriate consideration for the trial court. However, *Wiechmann* does not mandate that the trial court consider sibling bonds such that the failure to do so is legal error. Moreover, the trial court addressed TMR's bond with her older sister under Factor (e).

The trial court's findings as to these factors were not against the great weight of the evidence. We also cannot conclude that the trial court's ultimate custody determination was so palpably and violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or exercise of passion or bias. See *Fletcher*, 447 Mich at 879-880. Therefore, the trial court's decision awarding sole physical custody to plaintiff does not warrant reversal.

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ James Robert Redford